UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRIOT UNIVERSAL HOLDING, LLC,

    Plaintiff,

v.                                                     Case No. 12-C-0907

ANDREW MCCONNELL, Individually, and,
BOYLE, FREDRICKSON, NEWHOLM,
STEIN & GRATZ, S.C.,

    Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND TO STATE COURT**

On August 3, 2012, Plaintiff Patriot Universal Holding, LLC commenced this action for legal malpractice against Attorney Andrew McConnell and his firm, Boyle, Fredrickson, Newholm, Stein & Gratz, S.C., in the Circuit Court for Brown County, Wisconsin. Defendants removed the action to federal court on September 5, 2012, asserting federal jurisdiction is proper under 28 U.S.C. §§ 1338(a) and 1454 because plaintiff's cause of action necessarily depends on a resolution of substantial questions of federal patent law. Defendants argue that all of the claims in plaintiff's complaint relate to defendants' actions before the United States Patent and Trademark Office and their defense of clients in a patent infringement action. Plaintiff has now filed a motion to remand the action pursuant to 28 U.S.C. § 1447, asserting that this Court lacks jurisdiction because its cause of action arises out of state law and no federal question has been presented. For the reasons that follow, plaintiff's motion to remand will be denied.

**BACKGROUND**

Paul O. Gehl owns Plaintiff Patriot Universal Holding, LLC. (Compl. ¶ 1.) Prior to forming Patriot, Gehl invested in and managed several other corporations that were formed to research, develop, market, manufacture and license food patty molding machines. (*Id.* at ¶ 6.) Gehl's former companies included Progressive Technology of Manitowoc, Inc. (PTI) and Forming Innovative Technologies, LLC (Form-It). PTI and Form-It both retained Andrew McConnell as an attorney to provide intellectual property services, and McConnell did work for the companies over the course of several years. (*Id.* at ¶¶ 5-6, 8-13, 16-17, 37.) In 1996, McConnell worked for the law firm of Andrus, Sceales, Starke & Sawall, LLP, where he filed and prosecuted the first of three patent applications relevant to this lawsuit. (*Id.* at ¶¶ 16-17.) When McConnell joined Boyle, Fredrickson, Newholm, Stein & Gratz, S.C. (Boyle Fredrickson) in 2001, he continued to provide services to PTI and Form-IT. (*Id.* at ¶ 18.) McConnell's work for Form-It and PTI included providing advice on intellectual property matters, drafting and prosecuting patent applications before the United States Patent and Trademark Office (PTO), performing patent searches and analyses, offering formal opinions regarding patentability of inventions, and attending meetings, conferences, and discussions with named inventors, employees and consultants of Gehl's companies. (*Id.* at ¶¶ 5, 16-24, 44.)

At some point after 2004, the three patents that plaintiff alleges McConnell helped to prosecute on behalf of Form-It and PTI were assigned to plaintiff. (*Id.* ¶¶ 9, 11, 13, 27-30.) In 2010, plaintiff initiated a lawsuit against Formax, Inc. (Formax) and Provisur Technologies, Inc. (Provisur), alleging these companies infringed on the three patents at issue. (*Id.* at 36.) Formax and Provisur are plaintiff's competitors in the marketplace. (*Id.* at ¶¶ 14-15, 25, 30.) In the lawsuit, plaintiff alleges that Formax and Provisur manufactured, used, sold, imported and offered for sale

food product molding machines and drive apparatuses that are claimed in plaintiff's patents. (*Id.* at ¶¶ 33-36.)

Formax and Provisur are now clients of Boyle Fredrickson. (*Id.* at ¶ 38.) In 2011, while working for Boyle Fredrickson, McConnell filed requests for reexamination of the patents at issue on behalf of Formax and Provisur. (*Id.* at ¶¶ 38-44, 46.) In the requests for reexamination, Formax and Provisor contend that the patents at issue are invalid. (*Id.* at ¶¶ 39-42.) Plaintiff alleges McConnell helped draft the patent applications and is now challenging the same patents on behalf of its competitors. (*Id.* at ¶¶ 39-43.) Patriot alleges McConnell's position constitutes a conflict of interest in violation of Wis. S.C.R. 20:1.9. (*Id.* at ¶ 43.) Plaintiff also asserts that McConnell has breached his fiduciary duties because he has "afforded an otherwise unavailable benefit" to Formax and Provisur by virtue of filing the request for reexamination on their behalf after having prosecuted the same patents. (*Id.* at ¶ 46.) Plaintiff alleges its damages include attorney's fees and expenses incurred in moving to disqualify McConnell and Boyle Fredrickson in the underlying infringement lawsuit, fees and expenses incurred in filing responses in the PTO to the requests for reexamination, and lost profits from its licensing of the patents at issue. (*Id.*)

## ANALYSIS

Whether plaintiff's motion to remand should be granted turns on whether this Court has jurisdiction over plaintiff's legal malpractice action under 28 U.S.C. § 1338(a). Section 1338(a) grants federal courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents." An action "arises under" federal patent law if either (1) federal patent law creates the cause of action, or (2) the "plaintiff's right to relief necessarily depends on resolution of

3

a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988).

Under the well-pleaded complaint rule, whether the action arises under patent law "must be determined from what necessarily appears in the plaintiff's statement of his own claim." *Franchise Tax Bd. of Ca. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (internal quotations omitted). Yet, "merely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law." *Christianson*, 486 U.S. at 809, n.3. In addition, patent law must be essential to the plaintiff's claim as it appears on the face of the well-pleaded complaint, and not just one possible theory supporting a claim. *Id.* at 810-11 (explaining that "just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire [] claim 'arises under' patent law").

Federal patent laws undoubtedly did not create plaintiff's malpractice cause of action; therefore, this Court will only have jurisdiction if plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. In a patent-related legal malpractice action, a federal court properly exercises jurisdiction where the outcome of the malpractice claim turns on federal patent law. *Byrne v. Wood, Herron & Evans, LLP*, 676 F.3d 1024, 1027 (Fed. Cir. 2012) (Dyk, J., concurring in denial of petition for rehearing en banc). Unlike other attorney malpractice claims, patent-related malpractice claims often

> necessarily involve attorney conduct before the U.S. Patent and Trademark Office [] or before the federal courts [], and there is a substantial federal interest in ensuring that federal patent law questions are correctly and uniformly resolved in determining the standards for attorney conduct in these proceedings, even when the patent law issue is case-specific.

*Byrne*, 676 F.3d at 1026 (citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)).

4

*Byrne* highlighted the particularly difficult situation for federal courts determining the scope of their jurisdiction over patent-related malpractice claims. On the one hand, "attorney conduct in patent cases is implicated by the patent law itself" and therefore, the federal government will always have a direct interest in the availability of a federal forum. *Byrne*, 676 F.3d at 1026. Yet, the Federal Circuit has "produce[d] the odd result that malpractice claims stemming from an underlying federal suit will only belong in federal court when the federal issue is one of patent law." *Id.* at 1038 (O'Malley, J., dissenting from denial of petition for rehearing en banc). The court concluded, however, that denying federal jurisdiction poses too great a risk of allowing "different states to reach different conclusions as to the requirements for federal patent law in the context of state malpractice proceedings." *Id.* at 1026.

Here, plaintiff has essentially alleged a malpractice cause of action based on a conflict of interest theory. (*See* Pl. Reply Br. at 1.) Plaintiff asserts that McConnell "aided and abetted" patent infringement by filing a patent reexamination request on behalf of Formax and Provisur after having helped draft and prosecute the same patents for plaintiff. Plaintiff also alleges that defendants "have ignored their fiduciary duties and professional responsibilities by aiding and abetting the unfair competition undertaken by Formax and Provisur." (Compl. ¶ 45.)

In Wisconsin, to succeed on a legal malpractice claim, a plaintiff is required to prove four elements: (1) a lawyer-client relationship with the attorney; (2) the attorney committed acts or omissions constituting negligence; (3) the negligence caused injury to the plaintiff; and (4) the nature and extent of the injury. *Tallmadge v. Boyle*, 2007 WI App 47, ¶ 15, 300 Wis. 2d 510, 522, 730 N.W.2d 173, 179. Plaintiff's malpractice action is a classic state-law claim traditionally

maintained in state court. However, here, plaintiff's right to relief necessarily depends on the resolution of substantial questions of federal patent law, and therefore, federal jurisdiction is proper.

The court must analyze the plaintiff's pleadings "with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws." *Air Prod. & Chem., Inc. v. Reichhold Chem, Inc.*, 755 F.2d 1559, 1562 (Fed. Cir. 1985). Here, plaintiff seeks to recover: (1) attorney's fees and expenses to disqualify defendants from the underlying patent infringement suit, (2) attorney's fees and expenses incurred in filing responses to Defendant's requests for reexamination in the PTO, and (3) lost profits from licensing its patents incurred as a result of defendant's alleged conflict of interest contributing to patent infringement. (Compl. ¶ 46.)

Plaintiff places great emphasis on its first request for relief, and argues that because it seeks expenses incurred in attempting to disqualify McConnell based on the alleged conflict of interest, deciding any patent-law issues is unnecessary. Plaintiff contends that the Court need only focus on the conduct of defendants under Wis. S.C.R. 20:1.9. But plaintiff's claim is more complex than it lets on. In order to prove its claim, plaintiff must establish that McConnell owed a duty to plaintiff and breached that duty when he began representing Formax and Provisur and filed the request for reexamination of plaintiff's patents. To prove defendants breached a duty, plaintiff must first establish that an attorney-client relationship existed.

This element of plaintiff's claim requires the decision maker to determine whether an assignment of a patent transfers an attorney-client relationship. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1336-37 (Fed. Cir. 1988) (holding attorney could attack a patent he had prosecuted for assignor of patent, because there was no attorney-client relationship between

6

assignee and attorney). In other words, the court must assess whether a patent assignee, such as plaintiff, is a "former client" of an attorney who helped to draft or prosecute the original patent. This determination necessarily relies on an interpretation of patent law. Such a determination is the type which may "result in differing standards for attorney conduct and impairment of the patent bar's ability to properly represent clients in proceedings before the PTO and in the federal courts" if left to state courts. *Byrne*, 676 F.3d at 1027.

Plaintiff also seeks to recover damages it alleges it incurred in having to unnecessarily file responses to defendant's wrongful requests for reexamination in the PTO and lost profits from licensing royalties due to Defendant's breach. A decision maker must determine whether defendants caused the alleged damage—whether, in defendants' absence, plaintiff would have incurred these expenses or lost profits anyway. Here too, plaintiff's claims necessarily involve substantial questions of patent law. In particular, with regard to lost profits, a decision maker must determine the scope of the claims of the patents, the patents' validity, and whether and to what extent the patents cover specific products that would be subject to the licensing royalties claimed. Each of these determinations necessarily relies on principles of patent law.

Finally, plaintiff argues that its malpractice action does not require the resolution of the underlying patent infringement lawsuit, and points to the fact that the lawsuit is already pending independent of this action. Plaintiff also contends that its allegations do not challenge the validity of any patents prosecuted by McConnell. However, these facts do not mean that the malpractice action does not involve substantial questions of federal patent law giving rise to this Court's jurisdiction. *See Byrne*, 676 F.3d at 1026-27. As discussed, patent law need not directly create plaintiff's cause of action for the federal court to have jurisdiction over its claims. *Christianson*,

486 U.S. at 808-09. The question is whether an interpretation of federal patent law is in any way an essential element of the malpractice action. In this case, the answer is yes.

## CONCLUSION

For the foregoing reasons, this Court properly exercises its jurisdiction over plaintiff's complaint pursuant to 28 U.S.C. § 1338(a). Therefore, plaintiff's motion to remand this action to state court (ECF No. 8) is **DENIED**. Plaintiff's response to defendants' motion to dismiss is due on or before 21 days from the date of this order.

**SO ORDERED** this   13th   day of November, 2012.

                                            s/ William C. Griesbach
                                            William C. Griesbach, Chief Judge
                                            United States District Court