UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRIOT UNIVERSAL HOLDING, LLC,

        Plaintiff,

  v.                                                 Case No. 12-C-0907

ANDREW MCCONNELL, individually, and
BOYLE, FREDRICKSON, NEWHOLM,
STEIN & GRATZ, S.C.,

        Defendants.

**DECISION AND ORDER REMANDING CASE**

        Plaintiff Patriot Universal Holding, LLC commenced this action against Defendants Andrew McConnell and Boyle, Fredrickson, Newholm, Stein & Gratz, S.C. (Boyle Fredrickson) in state court and it was removed to this Court on September 5, 2012. The case is before me now on Plaintiff's motion to stay the proceedings and its renewed request to remand the case to state court. For the reasons that follow, this action will be remanded to state court because this Court lacks subject matter jurisdiction.

**BACKGROUND**

        The procedural posture of this case is briefly summarized as follows. Plaintiff filed this action in the Circuit Court for Brown County, Wisconsin on August 3, 2012. Plaintiff alleges that the defendants "have ignored their fiduciary duties and professional responsibilities by aiding and abetting . . . unfair competition." (Compl. ¶ 45.) Plaintiff claims that it is a former client of the defendants, and that the defendants assisted it with obtaining several patents. Plaintiff alleges that it has been damaged because the defendants have subsequently represented two of Plaintiff's competitors and assisted them

with related patent matters. Defendants removed the case to federal court on September 5, 2012, asserting federal subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338(a). Defendants argued the action arises out of federal law because Plaintiff's right to relief necessarily depends on substantial questions of federal patent law. Shortly thereafter, Defendants also filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Meanwhile, Patriot filed a motion to remand on October 2, 2012. The Court denied the motion to remand on November 13, 2012. The Defendants' motion to dismiss was fully briefed on January 4, 2013, but before the Court could decide it, Plaintiff filed a motion to stay the proceedings in order for the Court to reconsider the decision denying Plaintiff's motion to remand in light of the United States Supreme Court's recent decision in *Gunn v. Minton*, 133 S.Ct. 1059, 1065 (Feb. 20, 2013). Plaintiff contends that the decision affects this Court's continued subject matter jurisdiction. The Court permitted the parties to file supplemental briefs regarding the jurisdictional issue, and they did so on March 27, 2013.

The relevant facts are taken from the Complaint, and although they were set forth in the Court's previous decision, they will be reiterated here. Plaintiff is owned by Paul O. Gehl, who, prior to forming Patriot, invested in, controlled, and managed several other business entities that were similarly formed to research, develop, market, manufacture and license food patty molding machines. These entities included Progressive Technology of Manitowoc, Inc. (PTI), Forming Innovative Technologies, LLC (Form-It), and Othmar Group, LLC (Othmar). (Compl. ¶ 6.) On behalf of PTI, the law firm of Andrus, Sceales, Starke & Sawall, LLP filed and prosecuted applications for what would become United States Patent Nos. 5,980,228 and 5,730,650 (the '228 and '650 patents). PTI was listed as the assignee on the patents as issued by the United States Patent & Trademark Office (USPTO) in 1998 and 1999. (Compl. ¶¶ 16-17, Exs. 1-2, ECF No. 1.) McConnell was a member of the Andrus firm at the time and "was

officially appointed by the named inventor on that application, 'to [prosecute] application and transact all business [the USPTO] connected therewith.'" (Compl. ¶ 17.) Plaintiff is now the assignee of the '228 and '650 patents. (Compl. ¶¶ 9, 11.) When McConnell joined Boyle Fredrickson in 2001, he continued to provide services to PTI and Form-It. (Compl. ¶ 18.)

Plaintiff is also the named assignee on United States patent No. 7,207,789 (the '789 patent), issued by the USPTO in 2007. (Compl. ¶¶ 12-13, Ex. 3, ECF No. 1.) McConnell submitted the "specification, drawings, and original Claim One for what became the 789 Patent" to the USPTO. (Compl. ¶ 21.) He also met with the named inventors on the '789 patent to discuss intellectual property matters involving patent ownership, prior design, and patents owned by competitors. (Compl. ¶ 23.) In 2003, McConnell also performed a patent search and offered Form-It a formal opinion regarding the patentability of the invention described in the '789 patent in which he advocated that the '789 patent invention was patentable over prior art. (Compl. ¶ 24.) Plaintiff alleges that at some point after 2004, the '228, '650, and '789 patents were assigned to Plaintiff. (Compl. ¶ 28.) Plaintiff is the closely held successor in interest to Form-It and PTI. (Compl. ¶ 29.)

In 2010, Plaintiff initiated a lawsuit against two of its competitors, Formax, Inc. (Formax) and Provisur Technologies, Inc. (Provisur), alleging these companies stole proprietary intellectual property owned by Plaintiff and infringed on the three patents at issue. *Patriot Universal Holdings, LLC v. Alkar-RapidPak-MP Equipment, Inc., et al,* Case No. 10-C-355 (E.D. Wis.). Plaintiff alleges that Formax and Provisur are now clients of Boyle Fredrickson. In 2011, while working for Boyle Fredrickson, McConnell filed requests for reexamination of the '228, '650, and '789 patents on behalf of Formax and Provisur. In the requests for reexamination, Formax and Provisor take the position that the patents are invalid in light of prior art. (Compl. ¶ 39.) They also attack the basis for the patentability of the underlying technology described in the patents. (Compl. ¶ 40.) Thus, Plaintiff alleges that McConnell

has taken positions and made statements that are directly at odds with his prior work for PTI, Form-It, and Othmar, for whom he helped to obtain the '228, '650, and '789 patents. (Compl. ¶¶ 37, 41-42.)

Based on this conduct, Plaintiff moved to disqualify McConnell and Boyle Fredrickson in the underlying infringement lawsuit. That motion was held in abeyance after the parties agreed to limit Attorney McConnell's involvement and the entire action has since been stayed pending reexamination of the patents. In the meantime, Plaintiff filed the instant lawsuit, alleging the conduct of McConnell and Boyle Fredrickson violates "the Rules of Professional Conduct (SCR 20:19), which prohibit lawyers from representing a party which is adverse to a former client or using information gained during that former representation to the detriment of a former client." (Compl. ¶ 43.) Plaintiff also alleges that Defendants' conduct ignores "their fiduciary duties and professional responsibilities by aiding and abetting the unfair competition undertaken by Formax and Provisur." (Compl. ¶ 45.) Plaintiff contends that it has suffered damages as a result of Defendants' conduct, namely:

> Patriot's adversaries, Formax and Provisur, have been afforded an otherwise unavailable benefit by virtue of McConnell's dual representation. Patriot has been and continues to expend attorney's fees and expenses to disqualify McConnell and his firm, and to file responses in the Patent Office to Formax and Provisur's requests for reexamination. Patriot has lost profits from its licensing of its patents due to the unfair competition by Formax and Provisur. McConnell has aided and abetted Formax and Provisur in the unfair competition.

(Compl. ¶ 46.)

## ANALYSIS

Congress has granted federal courts exclusive jurisdiction over "any civil action arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). An action may "arise under" federal patent law in one of two ways. First, a case arises under federal law when federal patent law creates the cause of action. *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013). Second, even a state-law claim may arise under federal law if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065 (citing *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313-14 (2005)). Here, to the extent that Plaintiff has pled state-law claims, jurisdiction will only lie under the "special and small" second category. *Id.* at 1064 (quoting *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006)). "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, federal jurisdiction over a state-law action "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.

In *Gunn*, the Supreme Court held that § 1338(a) does not deprive the state courts of subject matter jurisdiction over patent malpractice claims. The Court clarified that "state legal malpractice claims based on underlying patent matters will rarely, if ever, arise under federal patent law for purposes of § 1338(a)." *Gunn*, 133 S.Ct. at 1065. Moreover, the Court emphasized that for a federal issue to be considered substantial, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires." *Id.* at 1066. Rather, the substantiality inquiry "looks instead to the importance of the issue *to the federal system as a whole*." *Id.* (emphasis added); *accord Empire Healthchoice Assurance*, 547 U.S. at 700 (explaining a federal issue is substantial where there exists a "pure issue of law, one that could be settled once and for all" and the resolution of which would be "both dispositive of the case and would be controlling in numerous other cases" (internal quotations omitted)).

In addition, *Gunn* explained that the federal interest in the development of a uniform body of patent law is not itself a sufficiently substantial interest to justify federal jurisdiction. *Gunn*, 133 S.Ct. at 1068 ("But the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough

to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a misunderstanding of patent law."). Similarly, federal courts' familiarity with patent law will not alone trigger the federal courts' exclusive patent jurisdiction. *Id*. Even if a state court decision in a malpractice action would have a preclusive effect in other proceedings, "[s]uch 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *Gunn*, 133 S.Ct. at 1068 (quoting *Empire Healthchoice Assurance*, 547 U.S. at 701). The resolution of the issue must have broader significance beyond the interests of the litigants themselves. *Id.* at 1066.

In light of these considerations, I am convinced that this court does not have federal subject matter jurisdiction over Plaintiff's state-law cause of action. Like *Gunn*, even though it may be necessary to decide disputed issues of federal patent law, this case presents no *substantial* issue of federal law that has broad significance beyond the interests of the parties. Defendants argue that this case differs from *Gunn* and presents a substantial issue of federal law because this Court previously suggested that deciding Plaintiff's malpractice action requires determining whether Plaintiff was a former client of the defendants, which in turn rests on an interpretation of patent law. However, *Gunn* clarified that such matters will "rarely, if ever" be substantial enough to give rise to federal jurisdiction. Even though deciding issues such as whether Plaintiff has proved that it was a former client or whether it has proved causation may necessarily involve the application and interpretation of federal patent law, *Gunn* holds that state courts are competent to resolve these issues. "There is no doubt that resolution of a patent issue in the context of a state legal malpractice action can be vitally important to the particular parties in that case. But something more, demonstrating that the question is significant to the federal system as a whole, is needed." *Gunn*, 133 S. Ct. at 1068. Under the principles set forth in *Gunn*, no issue of federal, system-wide importance is presented here. *Id.*

Notwithstanding the above, in its supplemental brief, Defendant also argues that the court has an independent basis for asserting subject matter jurisdiction because Plaintiff has pled a cause of action for "aiding and abetting" that is created by federal patent law. Plaintiff's complaint does not separately identify any claims. However, it alleges that "Mr. McConnell and the Defendant, Boyle Fredrickson, have ignored their fiduciary duties and professional responsibilities by aiding and abetting the unfair competition undertaken by Formax and Provisur." (Compl. ¶ 45.) Thus, the defendants argue, if this allegation can be read as separately alleging a right to relief based on aiding and abetting in violation of federal patent law, this Court would have exclusive jurisdiction over the matter pursuant to 28 U.S.C. § 1338(a). Indeed, the parties have argued in their briefs related to the Defendants' motion to dismiss that Plaintiff's complaint can be construed to allege a claim for aiding and abetting patent infringement. *See* 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").

But of course, under the well-pleaded complaint rule, whether the action arises under patent law "must be determined from what necessarily appears in the plaintiff's statement of his own claim" in the complaint. *Franchise Tax Bd. of Ca. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (internal quotations omitted). Thus, "whether a case arises under federal patent law 'cannot depend upon the answer.'" *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). Patent law must be essential to the plaintiff's claim as it appears on the face of the well-pleaded complaint, and not just one possible theory supporting a claim. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810-11 (1988) (explaining that "just because an element that is essential to a particular theory might be governed by federal patent law does not mean that the entire [] claim 'arises under' patent law").

Thus, the question is whether it can be determined from the face of Plaintiff's complaint that it has alleged a claim against Defendants for aiding and abetting patent infringement, therefore giving rise

to exclusive federal jurisdiction under § 1338(a).  Upon review of the complaint, I am convinced that federal jurisdiction cannot lie.  Again, Plaintiff has not laid out its cause of action in the clearest of terms.  But finding plaintiff has pled a claim that is created by federal law requires an unreasonable stretch of the imagination.  Plaintiff alleges that the defendants aided and abetted unfair competition.  Nowhere has it alleged facts that suggest that the defendants actively induced or assisted Formax and Provisur in infringing on Plaintiff's patents.  Plaintiff alleges that the infringing acts include "the manufacture, use, sale, importation and/or offer for sale of food product molding machines and drive apparatuses" claimed in Plaintiff's patents.  (Compl. ¶¶ 33-35.)  As to the defendants' role in the alleged infringement, Plaintiff only states that they have taken a "180 degree position in the litigation of which [they] now represent[] Formax and Provisur."  (Compl. ¶ 38.)  Plaintiff further alleges that McConnell has "taken a 180 degree position as to the validity of the patents" and has requested reexamination.  (Compl. ¶ 39.)  But the fact that Defendants represent a party in a patent infringement suit cannot by itself be read as an allegation that they are subject to liability for the patent infringement itself.

Moreover, Plaintiff concludes that McConnell's conduct violates the Rules of Professional Conduct governing attorney's actions in Wisconsin.  (Compl. ¶ 43.)  Thus, it appears Plaintiff has only alleged a cause of action based on the professional conduct of the defendants, and the alleged conflict of interest created by their representation of Formax and Provisur.  "[S]ince the plaintiff is the master of the complaint, the well-pleaded-complaint rule enables him, by eschewing claims based on federal law, . . . to have the cause heard in state court."  *Holmes Group*, 535 U.S. at 831 (internal quotations omitted) ("Not all cases involving a patent-law claim fall within the Federal Circuit's jurisdiction.").  Moreover, "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." *Christianson*, 486 U.S. at 810.  "If 'on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and

purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks,' . . . then the claim does not 'arise under' those laws. *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 26.) Plaintiff's right to relief plainly does not rest exclusively on federal patent law. A court cannot assume federal jurisdiction based on the possibility that the plaintiff might have alleged a cause of action based on federal law where there are virtually no indications anywhere else in the complaint either supporting such a federal claim, or indicating that such a federal claim is anything more than an alternate theory for relief.

If, in fact, the plaintiff did intend to allege a cause of action for patent infringement against the defendants, then it can move to amend the Complaint in state court. The defendant could, in that case, again file a notice of removal. But by all appearances, Plaintiff has elected to frame its complaint in terms of state law. A plaintiff is the master of its complaint and is therefore free to forego a federal claim and sue in state court on purely state law claims. If Plaintiff did not intend to forego a possible federal claim, then it will have to remedy the omission in state court. Accordingly, the case must be remanded to the Circuit Court for Brown County, Wisconsin.

## CONCLUSION

For the reasons stated herein, this Court lacks subject matter jurisdiction over this matter because it does not arise under an Act of Congress related to patents. 28 U.S.C. § 1338(a). Accordingly, this action is **REMANDED** to Brown County Circuit Court. The Clerk is directed to mail a certified copy of this order to the Clerk of Court for the Circuit Court for Brown County, Wisconsin pursuant to 28 U.S.C. § 1447(c).

Dated this 5th day of April, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court